UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MICHAEL CONNER                         CIVIL ACTION NO. 11-cv-2206

VERSUS                                 JUDGE HICKS

KRAEMER-SHOWS OILFIELD                 MAGISTRATE JUDGE HORNSBY
SERVICES, LLC, ET AL


**MEMORANDUM RULING**

**Introduction**

Michael Conner ("Plaintiff") was working for Kraemer-Shows Oilfield Services, LLC ("KSOS") at a DeSoto Parish oil and gas well when he slipped and fell down a metal staircase, causing injuries to his left shoulder.  Plaintiff filed suit in state court against NoRam Drilling Company (the alleged manufacturer and custodian of the staircase), Exco Resources, Inc. (the alleged custodian of the well and surrounding land), and KSOS (his employer).

Plaintiff and defendant KSOS are both Louisiana citizens, but Defendants nonetheless removed the case based on an assertion of diversity jurisdiction.  Defendants urge in their Notice of Removal that the citizenship of KSOS could be ignored because it was improperly joined. They contend that under Louisiana's worker's compensation law precludes Plaintiff from asserting a tort claim against KSOS.

Plaintiff filed a Motion to Remand (Doc. 4) in which he challenged the improper joinder plea. Plaintiff acknowledges that a worker who suffers a work-related injury is

ordinarily limited to recovering worker's compensation benefits from his employer and cannot sue the employer for tort damages, but he points to the statutory exception that applies when a worker is injured as a result of an employer's intentional act.  Intentional, in this context, means that the person either (1) consciously desires the physical result of his act or (2) knows that the result is substantially certain to follow from his conduct.  <u>Larroquette v. Cardinal Health 200, Inc.</u>, 466 F.3d 373, 376 (5th Cir. 2006).  The parties have submitted competing affidavits, medical records, and other exhibits relevant to this issue.  For the reasons that follow, the motion to remand will be decided on the face of the petition rather than piercing the pleadings, and the motion will be granted.

**Improper Joinder**

Congress has provided a statutory framework for removal of certain cases where there is diversity of citizenship.  Those statutes have been interpreted by the courts to require complete diversity; jurisdiction is lacking if any defendant is a citizen of the same state as any plaintiff.  That strict requirement would, on its face, permit a plaintiff to name as a defendant any citizen of his home state and defeat removal.  To prevent such shams, the "judge-imported concept of fraudulent joinder" has developed.  <u>Bobby Jones Garden Apartments, Inc. v. Suleski</u>, 391 F.2d 172, 176 (5th Cir. 1968).  The Fifth Circuit has since adopted the term "improper joinder" to describe the doctrine, but there is no substantive difference between the two terms.  <u>Smallwood v. Illinois Central R.R. Co.</u>, 385 F.3d 568 n. 1 (5th Cir. 2004) (<u>en banc</u>).

There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.  Only the second way is at issue in this case.  That second test asks whether the defendant has demonstrated there is no reasonable basis for the district court to predict the plaintiff might be able to recover against the in-state defendant. Smallwood, 385 F.3d at 573; Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003).

The "no reasonable basis" contest may take place in two different settings. In the first, the defendant challenges the adequacy of the plaintiff's pleadings, without the submission of evidence. The court conducts a Rule 12(b)(6)-type analysis to determine whether the complaint states a claim under state law against the in-state defendant.  Smallwood, 385 F.3d at 573.  The second setting for the "no reasonable basis" contest permits the defendant to challenge the plaintiff's allegations and attempt to demonstrate by summary judgment-type evidence  that the plaintiff  is  unable  to  prove  all  of the facts necessary to prevail.  The court has discretion in those circumstance to pierce the pleadings and analyze the improper joinder claim based on that evidence.  Hornbuckle v. State Farm Lloyds, 385 F.3d 538, 542 (5th Cir. 2004).

**The Petition**

Piercing the pleading is not appropriate in this case, as discussed below, so the improper joinder plea will be resolved by a Rule 12(b)(6)-type analysis, which must focus on the allegations in the state court petition at the time of removal.  Cavallini v. State Farm, 44 F.3d 256, 264 (5th Cir. 1995).  Plaintiff alleges that, at the time of the accident, he was

working for KSOS as a solids control supervisor at a DeSoto Parish well.  He was loading trucks with drill cuttings, weighing mud, and checking the centrifuges at the work-site premises that was owned or operated by Defendants NoRam and Exco.  Petition, ¶ 4.

Petitioner was going down a metal staircase that was attached to an active mud pit when he slipped on drilling mud and other materials on the staircase.  Plaintiff alleges that "[b]oth hands were on the handrails throughout the entire ordeal" when he "fell approximately from the second step from the top all the way to the bottom of the staircase, thereby causing severe and debilitating injuries to his left shoulder and resulting in permanent disability." ¶ 6.  The staircase is a high traffic area adjacent to the pumps and is constantly exposed to mud, oil-based lubricants and condensation, which makes it defective and extremely hazardous.  ¶ 7.

Within two hours after the accident, Plaintiff notified several persons of the accident and his injuries.  The persons notified included two representatives of Exco and two representatives of KSOS.  ¶ 8.  Plaintiff alleges that KSOS, in an effort to avoid a lost-time accident, opted not to file an incident report but did allow Plaintiff to seek medical treatment. It was soon determined that Plaintiff "had objective medical findings in his shoulder." Despite knowledge of this injury, KSOS compelled Plaintiff to continue working, which he did in fear of losing his good standing in the company.  ¶ 9.

An Exco representative, without the knowledge of Plaintiff or KSOS, did create an incident report.  About three months after the accident, a representative from Exco contacted KSOS and asked about Plaintiff. Exco commanded KSOS to put Plaintiff on medical leave

when it learned that Plaintiff was continuing to work after his injury without a medical release.  ¶ 10.

Plaintiff alleges that, as a result of the accident, he is permanently disabled and medically restricted from lifting over 10 pounds with his left arm, which will prevent him from returning to his work as a solids control technician and greatly restrict his work activities in the future.  ¶ 12.  The petition sets forth several paragraphs that describe various categories of damages and assert grounds for liability of NoRam and Exco.  ¶¶ 13-19.

Plaintiff then devotes a single paragraph to the potential liability of his employer, KSOS.  He begins paragraph 20 by recognizing that "with regard to the incident occurring within the course and scope of employment, he is precluded from pursuing an action in damages against [KSOS]."  He then alleges:

> However, additional damages that may have occurred as a result of this defendant's callous indifference and intentional acts and omissions in requiring the petitioner to continue to work with a debilitating condition after the incident is not barred by worker's compensation.  Requiring Michael Conner to perform his physically-intensive duties with a severe and debilitating condition yields substantial certainty that he would suffer further injury doing so.  In the event that petitioner suffered additional injury beyond the initial injury, the legal and proximate cause of the additional injuries or exacerbation of the injuries to the petitioner was the intentional acts, omissions, fault and strict liability of [KSOS] individually and by virtue of the doctrine of respondeat superior, including, but not limited to [alleged failures such as not providing a safe accommodation in light of medical condition, ignoring the medical needs of an employee, having an improper safety program, violating safety regulations, failure to train workers on allowing an injured worker to continue duties, and the like].

**Competing Evidence**

The record contains competing evidence from Plaintiff and KSOS relevant to Plaintiff's intentional tort claim. Plaintiff supported his motion to remand with an affidavit and medical records.  Plaintiff's affidavit adds many details in an effort to support the allegations in his petition.  He says that a left shoulder MRI showed extensive rotator cuff tear with complete tears of the supraspinatus and subscapularis tendons with retraction. Plaintiff alleges this report was communicated directly to Bob Parker of KSOS, but the company nonetheless instructed Plaintiff to return to full duty.  Plaintiff testifies that KSOS wanted to avoid showing a lost-time accident, and that is why it did not make an accident report or inform its worker's compensation insurer, and it is why KSOS continued to pay Plaintiff his full wage even after he was barred from the premises because of his injury. Plaintiff testifies that he later underwent shoulder surgery, and his injuries were more extensive than previously indicated. Plaintiff testifies that, after the surgery, KSOS ordered Plaintiff to return to work without medical release and put him in a warehouse where he had to perform lifting and other functions prohibited by his condition.  See Plaintiff's Affidavit at Doc. 4, Exhibit B.

Bob Parker of KSOS offers a competing affidavit (Doc. 21, Exhibit A) in which he squarely contests most of the key assertions in Plaintiff's affidavit.  Parker, who is Vice-President of Health, Safety & Environmental Matters, testifies that he was notified of Plaintiff's injury one day after the date Plaintiff alleges the accident happened.  Parker says that he immediately spoke with Plaintiff, who told him that another KSOS official wanted to send Plaintiff home to rest, but Plaintiff refused and said he felt he could continue to work.

Parker testifies that he spoke with Plaintiff again about two hours later, and Plaintiff again said he wanted to remain on the job site.  Parker called Plaintiff a third time later that day to check on his condition, and Plaintiff said that he was going to the hospital to have his shoulder checked.

Parker testifies that he spoke with Plaintiff again a couple of hours later, and Plaintiff said that Dr. Brister had given him a "return to work-conditional" authorization and that he was not to lift more than 10 pounds, with no overhead lifting.  KSOS allowed Plaintiff to return to work based on the release and Plaintiff's stated desire to continue to work.  Parker testifies that he spoke with Plaintiff five days later, and Plaintiff said he was doing much better and that the shoulder strain was not affecting his job tasks.

Parker testifies that he never tried to hide the fact of the accident.  He prepared a KSOS incident report six days after the accident and provided a copy to Exco.  Within less than ten days, he prepared an Employer Report of Injury/Illness and mailed it to KSOS's worker's compensation insurer.  Parker testifies that, from the time he was informed of the accident until Plaintiff stopped working for the company, he instructed Plaintiff and KSOS supervisors that Plaintiff could not perform work in excess of the restrictions placed on him by his doctors.  He flatly denies that he or anyone acting on behalf of KSOS ever intended to injure Plaintiff or cause his injury to worsen by allowing him to continue to work.

**Piercing the Pleadings**

Smallwood states that a Rule 12(b)(6) inquiry should ordinarily resolve whether there has been improper joinder, but "there are cases, hopefully few in number, in which a plaintiff

has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." <u>Smallwood</u>, 385 F.3d at 573.  In such cases, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry." <u>Id</u>.

The Court cautioned that a summary inquiry is appropriate only to identify the presence of "discrete and undisputed facts" that would preclude recovery against the in-state defendant, and the piercing of the pleadings should not entail substantial hearings. <u>Smallwood</u>, 385 F.3d at 573-74.  The Court provided examples of the type of inquiry that is appropriate: "For example, the in-state doctor defendant did not treat the plaintiff, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that can easily be disproved if not true.  <u>Id</u>., 385 F.3d at 574 n.12, citing <u>Travis v. Irby</u>, 326 F.3d 644, 648-49 (5th Cir. 2003).

The competing evidence submitted in this case, which goes beyond the affidavits discussed above and includes dueling interpretations of medical records, plainly goes far beyond the limited type of inquiry permitted by the Fifth Circuit.  The parties have presented a full blown summary judgment or trial-type contest, and almost all of the material facts are in dispute.  Going beyond the very limited summary process discussed above "carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined." <u>Smallwood</u>, 385 F.3d at 574.

Smallwood emphasizes that the improper joinder inquiry is to be limited, and "the decision regarding the procedure necessary in a given case must lie within the discretion of the trial court."  385 F.3d at 573.  The undersigned finds, based on the considerations discussed above, that the best exercise of the court's discretion is to not pierce the pleadings. To do so would require a fact-finding exercise that would go well beyond the summary inquiry into discrete and undisputed facts that may have been omitted or misstated by Plaintiff.[1] In any event, any contested issues of fact must be resolved in the plaintiff's favor in an improper joinder analysis. Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011), citing Travis v. Irby, 326 F.3d 644, 649 (5th Cir. 2003). Resolving the contested issues in that fashion favors remand, the same result reached without piercing the petition.

Exco filed a Motion to Strike (Doc. 11) several aspects of Plaintiff's testimony, particularly claims about the desire of the employer to avoid a lost time accident, the reason for the termination of Plaintiff's employment, and alleged hearsay statements made by medical providers. That motion will be denied as moot, given the court's election to decide the improper joinder plea without looking to this additional evidence.

---

[1] A similar result was reached in Daniels v. Tauren Exploration, Inc., 2009 WL 3188463 (W.D. La. 2009) when the removing defendants urged the court to pierce the pleadings and decide whether certain drilling operations extended the term of a lease held by the one of the 24 plaintiffs who was not diverse.  See also McFarland v. Smith & Nephew, Inc., 11-cv-1615 (W.D. La.) (declining to pierce the pleadings in a medical products case when the parties offered competing evidence regarding the ultimate question of liability).

**Analysis**

The improper joinder plea must be resolved by a 12(b)(6) type analysis of the petition. "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007).

The Rule 12(b)(6) standard is similar to the test applied to determine whether joinder is improper in a diversity removal case: There is no reasonable basis to predict that the plaintiff might be able to recover against a non-diverse defendant. Larroquette, 466 F.3d at 377; Travis, 326 F.3d at 648. It is also similar to the standard employed in Louisiana state courts when a defendant files an exception of no cause of action. The exception tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235 (La. 1993).

A number of Louisiana decisions have refused to grant an exception of no cause of action with respect to an employee's intentional tort claim against his employer. For example, a jackhammer operator alleged that his employer knew that injury was substantially certain to follow when it ordered him to operate his jackhammer and break up concrete slabs without the assistance of a helper. The operator's foot became entangled in the reinforcing wire imbedded in the concrete, causing him to trip and fall. These allegations sound much

like a negligence claim, but the plaintiff's petition included fairly simple allegations that the acts amounted to an intentional tort by the employer.  The trial court granted the employer an exception of no cause of action, and an appellate court affirmed, but the Supreme Court of Louisiana reversed in a one-paragraph opinion. The Court noted that conditions of the mind such as intent may be alleged generally, and an exception of no cause of action is triable only on the face of the petition. The petition alleged that the employer intended to injure the employee or knew that his injury was substantially certain to follow. The exception should, therefore, have been denied; the merit of the claim had to be determined after findings of fact on a motion for summary judgment or after trial. Carey v. UMC, 553 So.2d 472 (La. 1989). See also Rayford v. Angelo Iafrate Const., L.L.C., 806 So.2d 898 (La. App. 4th Cir. 2002) (employee alleged that company was substantially certain to injure him when it started crane work while knowing that nearby power lines were still energized; grant of exception reversed); Trahan v. Trans-Louisiana Gas Company, Inc., 618 So.2d 30 (La. App. 3d Cir. 1993) (employee alleged that employer required him to remove contaminated odorant from natural gas in blatant violation of safety regulations so that harm was substantially certain to occur; grant of exception reversed); De Blanc v. International Marine Carriers, Inc., 748 So.2d 649 (La. App. 4th Cir. 1999) (employees alleged that employer prescribed salvage methods that were substantially certain to cause asbestos exposure without proper safety gear so that employer knew employees were substantially certain to inhale asbestos; grant of exception reversed).  The De Blanc court acknowledged that the employer cited several cases in which appellate courts found that a plaintiff failed to establish the requisite

intent, but each of those cases was decided after trial on the merits or motion for summary judgment.  Only two of the cases granted an exception of no cause of action, but the plaintiffs in those cases merely used the word "intentional," which did not suffice to state a cause of action.  De Blanc, 748 So.2d at 654-55.

Defendants have not demonstrated that, based on the face of the petition, there is no reasonable basis to predict Plaintiff might be able to recover against his employer on the intentional tort theory. Employees frequently allege such claims, and they are usually unsuccessful in the end, often defeated by a motion for summary judgment.  As shown above, however, the claims are certainly not foreclosed by Louisiana law and often survive Rule 12(b)(6)-type scrutiny in the state courts. Plaintiff has alleged in his petition that his employer intentionally required him to continue to work with a debilitating condition which made the employer substantially certain that Plaintiff would suffer additional injury or exacerbation of his existing injuries. These allegations are sufficient on the face of the petition to defeat the improper joinder plea.

Exco argues (Doc. 10) that even if Plaintiff has alleged an intentional act his claim against his employer is foreclosed under a line of cases beginning with Weber v. State, 635 So.2d 188 (La. 1994). The plaintiffs in that case alleged that their husband/father died because his employer intentionally refused to authorize medical treatment for his occupational disease. The Worker's Compensation Act provides that penalties and attorney fees are the exclusive remedy for an employer's intentional and arbitrary refusal to provide medical treatment to a worker's compensation victim. Weber nonetheless fashioned a tort

Page 12 of  14

remedy that the Court said applied where the employer knew to a substantial certainty that its refusal would cause the death of the employee.  The Court returned to the issue and refused to extend this "narrow exception" in Kelly v. CNA Insurance Company, 729 So.2d 1033 (La. 1999) because the carpal tunnel injuries in that case were "far from life-threatening" and the denial or delay of treatment would not result in death or a significant worsening of the employee's condition.

Many subsequent appellate decisions have refused to allow a cause of action outside of terminal or life-threatening situations.  For example, Hodges v. Bossier Medical Center Healthcare Foundation, 764 So.2d 245 (La. App. 2d Cir. 2000) surveyed the law on this topic and held that a nurse whose spine collapsed during a delay in treatment was restricted to the remedies in the Act because her injuries, while unquestionably serious, were more akin to those in Kelly than Weber and were far from life threatening.

Exco argues that Plaintiff's theory of intentional tort in this case is analogous to the Weber line of cases and that Plaintiff's claims should be rejected because his injuries are not fatal or life threatening.  But Plaintiff's claim is not based on allegations that the employer denied or delayed medical care sought pursuant to the Act, so it does not rely on the judicially created remedy established in Weber.  Exco's "analogy" argument may be a reasonable one to pursue in the state courts in an effort to gain recognition of a new defense for employers who are accused of providing medical care to an injured employee but requiring him to continue working despite substantial certainty that additional injury would result. But Exco cannot point to any Louisiana decisions that have embraced that position or

that would otherwise employ the <u>Weber</u> line of cases to preclude the claim alleged by Plaintiff in this case. Having a creative argument for a defense is simply not enough to establish improper joinder; any ambiguities or uncertainties in state law must be resolved in favor of the plaintiff and remand. <u>Gray v. Beverly Enterprises-Mississippi, Inc.</u>, 390 F.3d 400, 405 (5th Cir. 2004).

**Conclusion**

The removing party bears the burden of demonstrating improper joinder, and the burden is a heavy one. <u>Smallwood</u>, 385 F.3rd at 575; <u>Smith v. Petsmart Inc.</u>, 278 F. App'x 377, 379 (5th Cir. 2008). Defendants have attacked Plaintiff's state-law tort claim against KSOS, but they have not met their burden of showing that it is a mere sham with no reasonable possibility of success in the state courts. Accordingly, the **Motion to Remand (Doc. 4)** is **granted** and, subject to the stay set forth in the accompanying order, the case is **remanded** to the 42nd Judicial District Court, DeSoto Parish, Louisiana, where it was pending as Civil Action No. 73194.  The **Motion to Strike (Doc. 11)** is **denied as moot**.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 9th day of July, 2012.

_____

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE