U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

JUN 1 1 2013

TONY R. MO̶̶̶ ___ CLERK
BY _____
        DEPUTY

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

MICHAEL CONNER

versus

CIVIL ACTION NO. 11-2206

JUDGE TOM STAGG

KRAEMER-SHOWS OILFIELD
SERVICES, LLC, NORAM
DRILLING COMPANY, and
EXCO RESOURCES, INC.

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by one of the

defendants in this case, Exco Resources, Inc. ("Exco"). See Record Document 46.

For the reasons set forth below, Exco's motion for summary judgment is **GRANTED**.

## I. BACKGROUND

This case arises from personal injuries allegedly sustained by the plaintiff,

Michael Conner ("Conner"), while Conner was working for his employer, Kraemer-

Shows Oilfield Services, LLC ("Kraemer"). On May 19, 2010, Kraemer entered into

a "Master Service and Supply Agreement" with Exco, an oil and gas exploration and

production company, wherein Kraemer agreed to provide "solids control services" at

Exco's well site in De Soto Parish, Louisiana. See Record Document 46, Ex. 2.

Conner alleges that on November 23, 2010, he slipped and fell down a staircase at the well site while "loading trucks with drill cuttings, weighing mud, and checking the low-speed and high-speed centrifuges." See Record Document 1, Ex. A at 4-5.

On November 17, 2011, Conner filed suit in the 42nd Judicial District Court, De Soto Parish, Louisiana, against Kraemer, Exco, and Noram Drilling Company ("Noram"), the operator of the rig located on the work site, seeking recovery in tort for injuries he sustained on November 23, 2010.[1] See id., Ex. A.  On December 23, 2011, Exco removed the case to this court on the basis of the parties' diversity of citizenship. See Record Document 1. Subsequently, Exco filed the instant motion for summary judgment, contending that it is immune from suit in tort under Louisiana's workers' compensation laws because Exco is Conner's "statutory employer." See Record Document 46. Conner opposed the motion and Exco replied. See Record Documents 58 and 59.

## II. ANALYSIS

### A.    Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant

---

[1] On September 17, 2012, Magistrate Judge Mark Hornsby granted Conner's motion to voluntarily dismiss Kraemer. See Record Documents 27 and 29. Exco and Noram remain as defendants in the litigation.

is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.**     **Tort Immunity.**[2]

      **1.**     **Exco Is Conner's Statutory Employer.**

Under the Louisiana Workers' Compensation Act, workers' compensation is the exclusive remedy for injuries sustained by an employee in the course and scope of his employment, except for those resulting from intentional acts.[3]  See La. R.S. 23:1021 et seq.; Moreno v. Entergy Corp., 105 So.3d 40, 49 (La. 2012).  Thus, the exclusive remedy provision immunizes employers from suits in tort brought by injured employees.  See id. (citing La. R.S. 23:1032(C)).

This immunity is not limited to direct employers.  Section 23:1032(A)(1) precludes an employee from filing suit for damages against his employer "or any principal." La. R.S. 23:1032(A)(1).  A "principal" is "any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof." La. R.S. 23:1032(A)(2).  Therefore, Louisiana's workers' compensation statutory scheme immunizes not only direct

---

[2]  This diversity case is governed by Louisiana's substantive law.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 585 S.Ct. 817 (1938); Holt v. State Farm Fire & Cas. Co., 627 F.3d 188, 191 (5th Cir. 2010).

[3]  Conner does not allege that his injuries resulted from intentional acts, and concedes that he was injured while acting within the course and scope of his employment.  See Record Document 1, Ex. A at 4.

employers but also so-called "statutory employers," those deemed by the Louisiana Workers' Compensation Act to be employers.  See e.g., Dugan v. Waste Mgmt., Inc., 41 So.3d 1263, 1266 (La. App. 2d Cir. 2010).  Thus, "the concept of the statutory employer concomitantly expands the range of entities that may avoid tort liability, even though these entities may never be asked to pay workers' compensation benefits for a particular injury." Berthelot v. Murphy Oil, Inc., 2010 WL 103871, at *3 (E.D. La. Jan. 7, 2010).

A statutory employment relationship may arise when "there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer." La. R.S. 23:1061(A)(3).  Where such a contract exists, "there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees." Id.  This presumption can be overcome only "by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." Id.

Exco contends that it is Conner's statutory employer by virtue of the Master Service and Supply Agreement entered into between Exco and Kraemer.  The agreement contains a provision entitled "INDEPENDENT CONTRACTOR" which

5

provides, in pertinent part, as follows:

> In all cases where [Kraemer's] employees (defined to include [Kraemer's] direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act, La. R.S. 23:1021 et seq. [Exco] and [Kraemer] agree that all work and operations performed by [Kraemer] and its employees pursuant to the Agreement are an integral part of and are essential to the ability of [Exco] to generate [Exco's] goods, products, and services for purposes of La. R.S. 23:1061(A)(1). Furthermore, [Exco] and [Kraemer] agree that [Exco] is the statutory employer of [Kraemer's] employees for purposes of La. R.S. 23:1061(A)(3), and [Exco] shall be entitled to protections that are afforded a statutory employer under Louisiana Law. Irrespective of [Exco's] status as the statutory employer or special employer (as defined in La. R.S. 23:10319(C)) of [Kraemer's] employees, [Kraemer] shall remain solely and primarily responsible for the payment of Louisiana workers' compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from [Exco].

Record Document 46, Ex. 2 at 4-5.

The Master Service and Supply Agreement clearly meets the requirements of Louisiana Revised Statute 23:1061(A)(3). The contract is written, it is between the principal (Exco) and a contractor which is Conner's immediate employer (Kraemer), and it expressly recognizes Exco as the statutory employer of Kraemer's employees. Conner does not contest the existence of this provision in the agreement or its contents. Accordingly, the court finds the clear and unambiguous language of the Master Service and Supply Agreement meets the requirements of Louisiana Revised Statute 23:1061(A)(3).

Because the Master Service and Supply Agreement meets the aforementioned statutory requirements, there is a rebuttable presumption of a statutory employment relationship between Exco and Connor.   See La. R.S. 23:1061(A)(3).   This presumption may only be overcome by Conner's showing that his work is not an integral part of or essential to Exco's ability to generate its product. See id.  Conner urges the court to apply the "totality of the circumstances test" from Kirkland v. Riverwood International USA, Inc., 681 So.2d 329, 336-37 (La. 1996), to determine if his work is integral to Exco's trade.[4]  According to Conner, the totality of the circumstances support his position because his work with Kraemer was "highly specialized" and independent from that of Exco's business. See Record Document 58 at 15.  Conner further contends that his work was not integral to Exco's trade because he merely facilitated the recycling of drilling mud and that recycling drilling mud is not absolutely necessary for drilling oil and gas wells. See id.

Both arguments advanced by Conner lack merit. First, as pointed out by Exco, the Kirkland test cited by Conner was legislatively overruled by the 1997 amendment to Louisiana Revised Statute 23:1061. See 1997 La. Acts, No. 315, § 2; Everett v.

---

[4] Factors to be considered under Kirkland include: "The nature of the business of the alleged principal; whether the work was specialized or non-specialized . . . whether the direct employer of the claimant was an independent business enterprise . . . ." Id.

Rubicon, 938 So.2d 1032, 1040 (La. App. 1st Cir. 2006) ("[T]he legislature specifically noted its intention to legislatively overrule the statutory employer tests stated in . . . Kirkland" in its 1997 amendments to the statute.). Accordingly, whether Conner's work was specialized or independent from that of Exco are not determinative factors in the court's analysis. See Everett, 938 So.2d at 1043 (holding plaintiff's characterizations of his work as "non-routine" and "extraordinary" insufficient to "rebut the presumption in the manner provided by the statute."). Instead of the Kirkland test, courts are to apply a much more liberal standard, one which asks whether the employee's work is essential to the putative statutory employer's ability to operate and generate its product. See id. at1041; Jackson v. St. Paul Ins. Co., 897 So.2d 684, 689 (La. App. 1st Cir. 2004).

As noted, Conner bears the burden of overcoming the presumption that he is Exco's statutory employee. However, Conner has not submitted any competent evidence that his function was not essential to Exco's ability to make a profit. Rather, Conner devotes four lines in his opposition brief to the conclusory assertion that his work is "simply an option employed by the operators of the well to save money. . . ." Record Document 58. On the other hand, Exco has submitted competent evidence on this issue. First, Exco points to Conner's deposition testimony in which Conner explains, quite succinctly, why his work is essential to Exco's ability to generate its

8

product:

> Q:    Is it possible for operations to continue without a company like
>        Kraemer-Shows out there?
>
> A:    You could, but you would have to be taking a big risk on sticking
>        your pipe. And what you have to do, is replace the drilling fluid.
>        After your low gravities would reach a certain amount, you have
>        to just completely change out your fluid, which would be too
>        expensive and time-consuming. That's why they got us.

Record Document 58, Ex. 1 at 2. In addition, Exco submits the affidavit of William

Boeing ("Boeing"), Exco's Vice President, who states that "without [the services of

Kraemer], Exco would be unable to explore, develop and produce minerals" and that

"Kraemer-Shows' work was necessary for operation of the rig and therefore was an

integral part of Exco's business." Record Document 46, Ex. 2 at 2.  Conner's

deposition testimony and Boeing's affidavit establish that Kraemer's work is essential

to Exco's business, exploration and production of minerals because recycling drilling

mud makes development of minerals economically and logistically feasible.

Considering this evidence, and given that Conner relied solely on conclusory

assertions in lieu of presenting any competent evidence, the court finds that Conner

has failed to overcome the presumption section 23:1061(A)(3) of a statutory

employment relationship.

## 2.     The Master Service Agreement Is Valid And Enforceable.

The thrust of Conner's opposition to Exco's motion for summary judgment is that the Master Service and Supply Agreement is invalid and unenforceable.  In support, Conner exclusively relies on one case, Prejean v. Maintenance Enterprises., Inc., 8 So.3d 766 (La. App. 4th Cir. 2009), for the proposition that a statutory employer's contractual attempt to limit its workers' compensation liability is invalid as against public policy.

Conner's reliance on Prejean is misplaced because Prejean is distinguishable from this case. The contractor agreement in Prejean provided the statutory employer was only liable for workers' compensation benefits only "if the immediate employer . . . is unable to meet their financial obligation under the Louisiana Workers' Compensation Statute . . . ." Id. at 774.  Louisiana's Fourth Circuit Court of Appeal found this condition invalidated the contract:

> Such a contract, if held valid, would place an onerous burden on an injured worker to discover and prove the financial or other reason the direct employer ascribes to being 'unable to pay' him compensation benefits, possibly involving lengthy litigation and very likely depriving that worker of medical care and weekly benefits under the workers' compensation statutory scheme.

Id. at 775.  In this case, the Master Service and Supply Agreement contains no such language and does not place such a burden on Kraemer employees.  Instead, it merely

allocates workers' compensation liability as between Kraemer and Exco: "[Kraemer] shall remain solely and primarily responsible for the payment of Louisiana workers' compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from [Exco]." Record Document 46, Ex. 2 at 4-5.

The court in Prejean and other Louisiana appellate courts have noted the validity of agreements which do not limit the rights of the employee to seek benefits but merely regulate responsibilities of the direct and statutory employers as between themselves. See Prejean, 8 So.3d 775-76 (citing Smith v. Marathon Ashland Petroleum, LLC, 887 So.2d 613, 617 (La. App. 5th Cir. 2004)); Mitchell v. S. Scrap Recycling, LLC, 93 So.3d 754, 760 (La. App. 1st Cir. 2012). This provision of the Master Service and Supply Agreement cannot be against public policy because the same result is reached by operation of law. Pursuant to Louisiana Revised Statute section 23:1061(B), the statutory employer is provided a right of indemnity against the direct employer if it pays compensation benefits. See Cantu v. Shaw Grp., Inc., 2010 WL 1752511, at *2 (La. App. 1st Cir. 2010) (citing 13 H. Alston Johnson, III, Louisiana Civil Law Treatise § 129 (4th ed. 2002)). Since Kraemer would be primarily liable for compensation benefits even in the absence of this provision of the

Master Service and Supply Agreement, the agreement does not violate public policy.[5]

Finally, Conner argues in passing that the Master Service and Supply Agreement is invalid pursuant to the Louisiana Oilfield Indemnity Statute, Louisiana Revised Statute section 9:2780(B), and Louisiana Civil Code Article 2004. Neither the statute nor the Civil Code article invalidate the agreement.

The Louisiana Oilfield Indemnity Act ("LOIA") voids oilfield indemnification agreements only "to the extent that they purport to require indemnification and/or defense where there is negligence or fault on the part of the indemnitee." Meloy v. Conoco, Inc., 504 So.2d 833, 838 (La. 1987). The Master Service and Supply Agreement here does not explicitly require Kraemer to indemnify Exco for Exco's own negligence. Further, assessing the validity of the Master Service and Supply Agreement's indemnity provision is premature at this time because whether Exco was at fault in causing Conner's injuries has not yet been adjudicated. See id. at 839. Thus, the LOIA does not invalidate the Master Service and Supply Agreement's indemnity provision.

---

[5]Even if the provision of the Master Service and Supply Agreement requiring Kraemer to pay all compensation benefits is invalid, the agreement's remaining provisions and Exco's status as Conner's statutory employer remain enforceable. See English v. Apache Corp., 2011 WL 3352011 (E.D. La. Aug. 3, 2011); McClain v. Motiva Enters., LLC, 2010 WL 3614310 (E.D. La. Sept. 8, 2010); Berthelot v. Murphy Oil, Inc., 2010 WL 103871 (E.D. La. Jan. 7, 2010).

Civil Code article 2004 is similarly unavailing to Conner. The article provides in, relevant part, that "[a]ny clause is null that, in advance, excludes or limits the liability of one party for causing physical injury to the other party." La. Civ. Code art. 2004. However, comment (e) to the article explicitly provides that: "This Article does not govern 'indemnity' clauses, 'hold harmless' agreements, or other agreements where parties allocate between themselves, the risk of potential liability towards third persons." Id. cmt. (e). Thus, the article plainly does not apply to the Master Service and Supply Agreement's indemnity provision.

## III. CONCLUSION

Exco is Conner's statutory employer by virtue of the Master Service and Supply Agreement. Conner failed to overcome the presumption that he is Exco's statutory employee, and the court finds that the Master Service and Supply Agreement is valid and enforceable. Accordingly, Exco's motion for summary judgment is **GRANTED** and all of Conner's claims against Exco are **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana this ___10th___ day of

June, 2013.

                                              JUDGE TOM STAGG

14